UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORVEN BURNETT,

    Plaintiff,

v.

QUEST DIAGNOSTICS, INC.,

    Defendant.
_____/

CASE NO. 02-CV-73592-DT
JUDGE JOHN CORBETT O'MEARA
MAGISTRATE JUDGE PAUL J. KOMIVES



FILED
APR 21
U.S. CLERK'S OFFICE
EASTERN DISTRICT COURT
EASTERN MICHIGAN

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR ATTORNEY FEES, COSTS AND ENTRY OF JUDGMENT (Doc. Ent. 31)

### Table of Contents

I.  RECOMMENDATION .................................................................... 2

II. REPORT ............................................................................. 2
    A. Procedural History ............................................................ 2
    B. The Instant Motion ............................................................ 3
    C. Applicable Law ................................................................ 4
       1. Mich. Comp. Laws § 37.2802 ("Costs, attorney fees") ..................... 4
       2. *Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................. 5
    D. Analysis ...................................................................... 6
       1. The Court should deem moot plaintiff's motion to the extent it seeks entry of judgment. ................................................................ 6
       2. The Court should award plaintiff attorney fees in the amount of $68,143.50 ($96,072.50-$24,024-$3,905.00). ............................................... 6
          a. The Court should conclude that plaintiff's lead counsel's regular billing rate of $275 is unreasonable and should accordingly reduce plaintiff's request for attorney fees by $24,024 ($275-$198x312). ........................... 8
          b. The Court should conclude that the 35.5 trial hours at a rate of $110 attributable to attorney Thomas are unreasonable and should accordingly reduce plaintiff's request for attorney fees by $3,905 (35.5x$110). .......................... 15
       3. The Court should award plaintiff costs in the amount of $3,902.24 ($4,012.31-$110.07). ........................................................................ 16

III. NOTICE TO PARTIES REGARDING OBJECTIONS ............................................. 17

I. **RECOMMENDATION**: The Court should grant in part and deny in part plaintiff's motion to the extent it seeks an award of attorney fees and costs. Specifically, the Court should award plaintiff attorney fees in the amount of $68,143.50 and costs in the amount of $3,902.24. Furthermore, the Court should deem moot plaintiff's motion to the extent it seeks entry of judgment.

II. **REPORT**:

A. **Procedural History**

Originally filed in Wayne County Circuit Court, this case was removed to this Court on September 9, 2002. In his complaint, plaintiff Morven Burnett alleged a cause of action against defendants Quest Diagnostics, Inc. (Quest), Jeff Johnson and Rod Van Wagoner for age discrimination under the Elliott-Larsen Civil Rights Act. On the date of removal, defendant Quest filed an answer and affirmative defenses.[1]

In advance of trial, defendant Quest filed four motions. On January 20, 2004, defendant Quest filed a motion for summary judgment. A response was filed on February 9, 2004 and a reply was filed on February 20, 2004. Judge O'Meara denied the motion on March 9, 2004. Defendant Quest also filed two motions in limine on April 27, 2004. Responses to these motions were filed on September 9, 2004. Both motions were terminated on February 25, 2005. On November 16, 2004, defendant Quest filed an emergency motion to adjourn trial. A response was filed on November 18, 2004. The motion was terminated on November 19, 2004.

The jury trial began on January 11, 2005, and ended on January 18, 2005. Jury deliberation began on the last day of the trial and concluded on January 19, 2005. The jury

---

[1] Johnson and Van Wagoner were terminated as defendants on January 23, 2004.

returned a verdict in favor of plaintiff against defendant Quest in the amount of $500,000.00.

**B.     The Instant Motion**

On February 3, 2005, plaintiff filed a motion for an award of attorney fees and costs under the Elliott-Larsen Civil Rights Act and for entry of judgment. (Doc. Ent. 31 [Mtn.]). Plaintiff seeks attorney fees in the amount of $96,072.50 and costs in the amount of $4,012.31, for a total of $100,084.81. Mtn. at 2.

On February 17, 2005, defendant Quest filed a response, claiming that "the attorney fees and costs sought by plaintiff are unreasonable and were not necessarily incurred." (Doc. Ent. 32 [Rsp.] at ii).[2] Particularly, defendant Quest contends:

> . . . Plaintiff seeks an unreasonable amount of attorney fees based on an excessive lodestar rate in the amount of $275, which should be reduced to no more than $188, and 35.5 hours of time at trial at an hourly rate of $110 for an attorney who did not actively participate. Likewise, Quest should not have to pay the approximately $170 sought in costs as reimbursement for meals.

Rsp. Br. at 1. Therefore, defendant Quest seeks at least a $31,600.00 reduction in the amount sought. Rsp. Br. at 1.[3]

On February 23, 2005, Judge O'Meara referred plaintiff's motion to me for report and

---

[2] Also pending before the Court is defendant Quest's March 8, 2005, renewed motion for judgment as a matter of law or, in the alternative, for a new trial and/or remittitur. (Doc. Ent. 35). This motion is set for hearing before Judge O'Meara on May 20, 2005. (Doc. Entries 36 and 37). Plaintiff filed a response to defendant Quest's motion on March 30, 2005. (Doc. Ent. 44).

[3] It is not clear how defendant Quest arrived at the total amount of $31,600. As discussed below, defendant Quest seeks a $27,144 reduction in attorney Tomlinson's fees and a $3,905 reduction in attorney Thomas' fees, for a total request for reduction of attorney fees in the amount of $31,049. Rsp. at 4. Defendant Quest also seeks a reduction of approximately $170 for attributable to meals. This report therefore assumes that plaintiff is seeking a reduction of $31,219 in the amount of costs and fees being sought.

recommendation. (Doc. Ent. 33). As of April 10, 2005, plaintiff has not filed a reply.

**C.    Applicable Law**

**1.    Mich. Comp. Laws § 37.2802 ("Costs, attorney fees")**

"A court, in rendering a judgment in an action brought pursuant to this article [of the Elliott-Larsen Civil Rights Act], may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate." Mich. Comp. Laws § 37.2802. "[T]he Michigan Legislature intended to accomplish two purposes in enacting the attorney fee provision of the Elliott-Larsen Civil Rights Act. First, attorney fee awards are intended to encourage persons deprived of their civil rights to seek legal redress as well as to ensure victims of employment discrimination access to the courts. A second purpose in allowing attorney fee recovery under the Elliott-Larsen Civil Rights Act is to obtain compliance with the goals of the act and thereby deter discrimination in the work force." *King v. General Motors Corp.*, 136 Mich. App. 301, 307-308, 356 N.W.2d 626, 629 (1984) (internal and external citations omitted).

"Elliott-Larsen fees should ordinarily be granted to prevailing plaintiffs, except where special circumstances would make such an award unjust. This rule, recently reaffirmed by the United States Supreme Court in *Blanchard [v. Bergeron*, 489 U.S. 87 (1989)],[] is fair and reasonable and aptly promotes the sound operation of the state's civil rights laws." *Kindig v. Rockwell International Corp.*, 709 F.Supp. 787, 792 (E. D. Mich. 1989). "[T]he decision to grant or deny an award of attorney fees under M.C.L. § 37.2802; M.S.A. § 3.548(802) is within the discretion of the trial court." *King v. General Motors*, 136 Mich. App. 301, 307, 356 N.W.2d 626, 629 (1984).

4

2.  *Hensley v. Eckerhart*, 461 U.S. 424 (1983)

In *Hensley v. Eckerhart*, 461 U.S. 424, 433-434 (1983), the United States Supreme Court provided the following guidance for the determination of a reasonable attorney fee:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S. Rep. No. 94-1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private proactive ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S. App. D. C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley v. Eckerhart*, 461 U.S. 424, 433-434 (1983).

Furthermore, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434 (external footnote omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. "Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.*

Additionally, "[w]here settlement [of the fee amount] is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours

5

expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "[T]he district court has discretion in determining the amount of a fee award." *Id.* "'A district court's award or denial of attorney's fees is reviewed for abuse of discretion.'" *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 348-349 (6th Cir. 2000) (citing *Cramblit v. Fikse*, 33 F.3d 633, 634 (6th Cir. 1994) (per curiam) (citation omitted)). "Generally, the trial judge's exercise of discretion in statutory fee award cases is entitled to substantial deference, especially when the rationale of the award was predominantly fact-driven." *Adcock-Ladd*, 227 F.3d at 349 (citing, among other cases, *Hensley*, 461 U.S. at 437).

**D.  Analysis**

**1.  The Court should deem moot plaintiff's motion to the extent it seeks entry of judgment.**

On February 22, 2005, Judge O'Meara entered judgment providing that "[p]laintiff shall recover of Defendant [Quest] the sum of Five Hundred Thousand and no/100 ($500,000.00) Dollars in connection with Plaintiff's claim for age discrimination, plus costs and statutory interest from the date of the filing of Plaintiff's Complaint, until the Judgment is satisfied." (Doc. Ent. 34).

In light of Judge O'Meara's February 22, 2005, judgment, the Court should deem moot plaintiff's motion to the extent it seeks entry of judgment.

**2.  The Court should award plaintiff attorney fees in the amount of $68,143.50 ($96,072.50-$24,024-$3,905.00).**

Plaintiff seeks attorney fees in the amount of $96,072.50. Mtn. at 2 ¶ 4; Mtn. Ex. 1 at 10. The amount sought is itemized as follows:

| Attorney | Time | Rate | Value |
|---|---|---|---|
| Brent W. Thomas | 56.75 | $110.00 | $6,242.50 |
| Christopher P. Mansur | 8.50 | $140.00 | $1,190.00 |
| Edward S. Toth | 1.75 | $160.00 | $280.00 |
| Littlefield Paralegal | 38.50 | $60.00 | $2,310.00 |
| Richard B. Tomlinson | 312.00 | $275.00 | $85,800.00 |
| Raymond J. Sterling | .50 | $225.00 | $112.50 |
| Raymond J. Sterling | .50 | $275.00 | $137.50 |
| **Total** | **418.50** | | **$96,072.50** |

Mtn. Ex. 1 at 10.

"Where attorney fees are to be awarded, the court must determine the reasonable amount of fees according to various factors, including (1) the skill, time, and labor involved, (2) the likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer, (3) the fee customarily charged in that locality for similar services, (4) the amount in question and the results achieved, (5) the expense incurred, (6) the time limitations imposed by the client or the circumstances, (7) the nature and length of the professional relationship with the client, (8) the professional standing and experience of the attorney, and (9) whether the fee is fixed or contingent." *Grow v. W.A. Thomas Co.*, 236 Mich. App. 696, 714-715, 601 N.W.2d 426, 436 (1999) (citing *Wood v. Detroit Auto. Inter-Insurance Exchange*, 413 Mich. 573, 588, 321 N.W.2d 653 (1982)); *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich.App. 94, 114, 593 N.W.2d 595 (1999)).

Plaintiff addresses several of these factors in his motion. He argues that "the Court's file in this matter demonstrates the skill, time and labor which was involved in the prosecution of this case as well as . . . the difficulty of the case." According to plaintiff, "[d]efendant vigorously defended this action, utilizing experienced defense counsel from the Foley & Lardner firm." Mtn. Br. at 2. Specifically, plaintiff claims that his counsel "devoted substantial time and effort

7

to the development of the case during the pretrial stages." Mtn. Br. at 2. In support of this argument, plaintiff mentions defendant Quest's production of approximately one thousand five hundred (1,500) documents in response to discovery requests; the substantial nature of plaintiff's response to defendant Quest's dispositive motion; and aggressive opposition to defendant Quest's motions in limine. Mtn. Br. at 2-3. Furthermore, plaintiff argues that "[t]he hotly contested trial in this matter and the numerous legal issues raised by [defense] counsel [] further demonstrate the skill, time and labor which were involved in trying [p]laintiff's case to a successful verdict." Mtn. Br. at 3. Plaintiff additionally notes that "[d]espite the substantial risk in the case, [d]efendant never extended any settlement offer[.] As a result, [p]laintiff had no alternative but to try the case to verdict." Mtn. Br. at 3.

Notwithstanding these arguments, defendant Quest's objections to the amount sought as attorney fees are narrow in scope. First, defendant Quest objects to the reasonableness of attorney Tomlinson's hourly rate. Rsp. at 4. Second, defendant Quest objects to the reasonableness of 35.5 trial hours billed by attorney Thomas. Rsp. at 4.

**a.     The Court should conclude that plaintiff's lead counsel's regular billing rate of $275 is unreasonable and should accordingly reduce plaintiff's request for attorney fees by $24,024 ($275-$198x312).**

As mentioned above, plaintiff seeks attorney fees attributable to Richard B. Tomlinson for 312.00 hours of work at an hourly rate of $275.00 ($85,800.00). In support of his claim that the requested attorney fees are reasonable, plaintiff notes, in part, that his lead counsel (Richard B. Tomlinson) "is a 1977 graduate of the University of Michigan Law School[,]" "has successfully tried numerous cases through verdict in both State and Federal Courts, representing mostly plaintiffs and some defendants in employment litigation and other complex commercial

8

litigation[,]" and "has over twenty-seven (27) years of experience trying employment cases." Mtn. Br. at 3.[4]

"The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community[.]" *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citing *Blum*). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. *See also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989). "'[A] reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.'" *Blum*, 465 U.S. at 897 (citing S.Rep. No. 94-10011, p. 6 (1976)). *See also Roland v. Johnson*, No. 91-1460, 1992 WL 214441, **3 (6th Cir. 1992) (unpublished) ("Hourly rates should not exceed what is necessary to encourage lawyers within the relevant community to undertake legal representation.") (citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir.1986)).

Defendant Quest relies upon the State Bar of Michigan 2003 Economics of Law Practice in its argument that attorney Tomlinson's hourly rate should be reduced: "Based on data in the Economics of the Practice of Law Survey and apposite case law, the lodestar rate reimbursable

---

[4]Plaintiff maintains that "[e]ven though this was a contingent fee case, [p]laintiff's counsel is in the practice of and maintained all billing records contemporaneously with the performance of services." Mtn. Br. at 3-4. He further notes that $275 is his normal billing rate. Mtn. Br. at 4; Mtn. Ex. 1. The accuracy of attorney Tomlinson's billing or the fact that $275 is his normal billing rate are unchallenged.

9

for Mr. Tomlinson's time should be set at $188.[5] Hence, attorney fees for Mr. Tomlinson's time should be reduced by $27,144." Rsp. at 4.

In several cases the Michigan courts have considered the State Bar of Michigan's "Economics of Law Practice" publication when determining an award of attorney fees. *RVP Development Corp. v. Furness Golf Const. Inc.*, Nos. 241125, 241126, 2004 WL 1737589, *6 (Mich. App. 2004) (unpublished) ("several of the categories considered in the 2000 Desktop Reference on the Economics of Law Practice in Michigan are not appropriately considered in establishing reasonable attorneys' fees, such as the size of firm or practitioner classification."); *Sutherland v. Kennington Truck Services, Ltd.*, No. 225034, 2002 WL 87502, *2 (Mich. App. 2002) (unpublished) ("an hourly fee for attorney Steinberg equal to the fee sought for attorney Wheaton was appropriate because: (1) attorney Steinberg's experience was comparable to attorney Wheaton's; (2) the case involved an average negligence action; and (3) while attorney Steinberg might command a larger hourly fee in Wayne County, his requested fee was not reasonable in Monroe County."); *Bacon v. Arbor Drugs, Inc.*, Nos. 177313, 181872, 1997 WL 33353630, *3 (Mich. App. 1997) (unpublished) ("Despite the fact that plaintiff's attorney is undoubtedly a respected trial attorney, the fees assessed by the trial court were excessive.") (citing 1994 Desktop Reference on the Economics of Law Practice in Michigan, 67 Mich. BJ No. 11B, pp 1217-1246); *Smolen v. Dahlmann Apartments, Ltd.*, 186 Mich.App. 292, 297, 463 N.W.2d 261, 264 (1990) ("we decline to hold that the product of multiplying reasonable hours by

---

[5]Defendant Quest claims that the 2003 version of the Michigan Bar Journal's Economics of the Practice of Law Survey states that the median hourly rate for a Michigan attorney is $188.00. Rsp. at 3. Upon examination, it appears that these are the figures determined to be the average hourly billing rate for a Michigan attorney with 20-29 years in practice.

10

a reasonable hourly rate is presumed to provide a reasonable fee. However, this does not preclude the trial court from considering a reasonable hourly rate. To this extent, we draw the trial court's attention to the 1988 Economics of Law Practice Survey, 67 MichBJ, No 11B (1988)."); *Temple v. Kelel Distributing Co., Inc.*, 183 Mich.App. 326, 333, 454 N.W.2d 610, 613 (1990) ("In determining a reasonable hourly or daily rate for purposes of the mediation rule, the lower court should utilize the empirical data contained in the Law Practice Survey as well as data contained in other reliable studies or surveys.").

Likewise, the United States District Court for the Western District of Michigan has also considered the Economics of Law Practice publication. *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, No. 1:90-CV-1015, 1992 WL 330271, *2 (W. D. Mich. 1992) ("Nor is his hourly billing rate ($95) particularly high, even if this case had been closer to being a garden-variety type. To be sure, Hunt's rate barely passes the 50th percentile mark of all attorneys who practice in the northern Michigan ("Out State, Lower Peninsula") area; the rate exceeds the median by mere five dollars.") (referencing The Economics of Law Practice in Michigan, 70 Mich.B.J. 1225, 1239 (1991)).

Mindful of *Blum*'s direction that "'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community," *Blum*, 465 U.S. at 895, and the foregoing case law, the Court should look to the State Bar of Michigan 2003 Economics of Law Practice for guidance in assessing the reasonableness of attorney Tomlinson's hourly rate. The publication contains a distribution of 2003 hourly billing rates for Michigan attorneys. *Id.* at 25. Assuming the work for which reimbursement is requested was performed out of plaintiff's counsel's Troy, Michigan, office, the average rate for an attorney with an office location in

Oakland County is $198 (north of Big Beaver) and $193 (south of Big Beaver). *Id.* at 26.[6] The average rate for 20-29 years in practice is $188. *Id.* at 25. The average rate for an attorney with a primary field of law as employment law (management) is $174, and the average rate for an attorney with a primary field of law as plaintiff litigation other than personal injury is $176. *Id.* at 25.

As at least one court has noted, "the average market rate in the local legal community as a whole is a better approximation of the hourly rate that would be charged by reasonably competent counsel than the actual billing rate charged by a single attorney." *Albion Pacific Property Resources, LLC v. Seligman*, 329 F.Supp.2d 1163 (N. D. Ca. 2004). In this case, as previously noted, the average hourly billing rate in Oakland County, Michigan, is $198 or $193, depending on whether the office is north or south of Big Beaver. Although plaintiff's counsel's address is along this dividing line, it is on the north side of Big Beaver; therefore, this report will use the average billing rate of $198 to determine the lodestar. This would place the lodestar for attorney Tomlinson's work in this case at $61,776 (312x$198).

Given that attorney Tomlinson's normal billing rate is $275 per hour and that he is seeking reimbursement in the amount of $85,800, the Court should consider whether the lodestar amount should be adjusted upward or downward. *Hensley*, 461 U.S. at 434. It is possible that, as plaintiff argues, the case "was so well put together and so compelling that the jury rendered a substantial verdict." Mtn. Br. at 4. However, I am persuaded by several cases which state that an enhancement to the lodestar is rare. *Murray v. Weinberger*, 741 F.2d 1423, 1430 (D. C. Cir.

---

[6]Plaintiff's counsel's office is located at 2600 West Big Beaver Road.

1984) ("Only in the rare case of exceptional success is an enhancement of the lodestar proper for above average quality of representation."); *Howard v. Canteen Corp.*, 192 Mich. App. 427, 439, 481 N.W.2d 718, 725 (1991) ("The court's discretion to adjust the lodestar upward is limited, though it can be adjusted for quality of representation in those rare circumstances when the attorney's work is so superior and outstanding that it far exceeds client expectations and normal levels of competence and in rare cases or extraordinary circumstances when it is necessary for attracting competent counsel.").[7] Furthermore, in *Albion*, the court stated that "an above-average rate may be appropriate in certain situations[,]" but carefully noted that "[a]n award of reasonable attorney fees 'controls what the losing defendant must pay, not what the prevailing party must pay his lawyer.'" *Albion*, 329 F.Supp.2d at 1171 (citing *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990)). As the court noted, "[t]he losing party is obligated to pay only the rate charged by reasonably competent counsel." *Id.* at 1171. Here, although the verdict of $500,000 was substantial, the average hourly billing rate for northern Oakland County need not be adjusted based upon "the amount in question and the results achieved[.]" *Grow v. W.A. Thomas Co.*, 236 Mich. App. 696, 714-715, 601 N.W.2d 426, 436 (1999); *see also Hensley*, 461 U.S. at 434.

This conclusion is buttressed by the apparent fact that plaintiff's lead counsel's regular billing rate exceeds the amount normally associated with reasonably competent counsel. Attorney Tomlinson's regular billing rate of $275 per hour is between the 75th and 95th

---

[7] *Howard* was overruled on other grounds by *Rafferty v. Markovitz*, 461 Mich. 265, 272-273, 273 n.6; 602 N.W.2d 367, 370, 370 n.6 ("We hold that the plaintiff was compensated for her reasonable attorney fees under § 802 of the Civil Rights Act. She thus had no remaining 'actual costs' for which she could claim compensation under the mediation court rule. Accordingly, we reverse the judgments of the circuit court and the Court of Appeals with regard to the award of attorney fees[.]").

percentiles ($225 and $290) for an attorney who has practiced from 20 to 29 years. State Bar of Michigan 2003 Economics of Law Practice at 25. It is also between the 75th and 95th percentiles ($200 and $295) for Michigan attorneys and for attorneys with offices in Oakland County whether the office is north of Big Beaver ($241 and $341) or south of Big Beaver ($225 and $300). *Id.* at 25. Furthermore, it is above the 95th percentile where the practice focus is on employment law (management) ($230) and also where the practice focus is on non-personal injury plaintiff litigation ($250).

Furthermore, in the absence of supporting documentation from plaintiff, the Court should conclude that the $198 average hourly billing rate for an attorney with an office in Oakland County (north of Big Beaver), which is higher than the $188 average hourly billing rate for an attorney with 20-29 years experience, adequately reflects considerations such as plaintiff's counsel's professional standing and experience. *See Temple v. Kelel Distributing Co., Inc.*, 183 Mich.App. 326, 333, 454 N.W.2d 610, 613 (1990) (study or survey "data should be utilized and coordinated with the other relevant criteria such as the professional standing and experience of the attorney; the skill, time, and labor involved; the amount in question and the results achieved; the difficulty of the case; the expenses incurred; and the nature and length of the professional relationship with the client.") (referencing *Wood* and *Crawley*); *Kendrick v. Atcor, Inc.*, No. 87 C 1186, 1988 WL 84124, *1 (N. D. Ill. 1988) (where petitioners sought application of a multiplier to adjust the lodestar upward based upon issue complexity; high litigation risk; favorable result; and attorney qualifications, the court stated in part that "[t]hese rates adequately reflect the competence and skill of counsel and the complexity of the issues presented by this particular case. Accordingly, those criteria provide no independent basis for increasing the award in this

action.").

Therefore, as previously noted, the Court should compute the lodestar by multiplying a reasonable hourly rate for attorney Tomlinson of $198 by the hours attributable to him (312), or $61,776. In other words, the Court should conclude that plaintiff's lead counsel's regular billing rate of $275 is too high to be the lodestar rate in this case and should accordingly reduce plaintiff's request for attorney fees by $24,024 ($275-$198x312).[8]

**b.     The Court should conclude that the 35.5 trial hours at a rate of $110 attributable to attorney Thomas are unreasonable and should accordingly reduce plaintiff's request for attorney fees by $3,905 (35.5x$110).**

As mentioned above, plaintiff seeks attorney fees attributable to attorney Brent W. Thomas for 56.75 hours of work at an hourly rate of $110.00 ($6,242.50). According to defendant Quest, plaintiff's request for reimbursement "includes 35.5 hours of 'trial' time at $110 per hour for [attorney Thomas] although he merely observed and did not participate in the trial. Trial time for [attorney Thomas] should not be compensated because he did not participate or contribute at trial. Thus, Plaintiff's request should be further reduced by $3,905." Rsp. at 4.

The 35.5 trial hours attributable to attorney Thomas are described as follows: 1/11/05 (4 hours for "[f]irst day of trial, jury selection and opening statements"); 1/12/05 (8 hours for "[t]rial day 2"); 1/13/05 (8 hours for "[t]rial day 3"); 1/14/05 (4 hours for "[t]rial day 4"); 1/18/05 (8 hours for "[t]rial day 5"); 1/19/05 (3.5 hours for "[t]rial day 6"). Mtn. Ex. 1 at 9-10. Plaintiff does remark that "[t]he hotly contested trial in this matter and the numerous legal issues raised by

---

[8]Defendant Quest does not object to attorney Sterling's hourly billing rates of $225 and $275. Therefore, this report does not address the reasonableness of these charges.

counsel for the [d]efendants further demonstrate the skill, time and labor which were involved in trying [p]laintiff's case to a successful verdict." Mtn. Br. at 3. However, defendant Quest's objection as to the trial time attributable to attorney Thomas raises the question of the reasonableness of such charges. Furthermore, the description of the charges supplied with plaintiff's motion does not put to rest the issue of the reasonableness raised in defendant Quest's response and plaintiff has not filed a reply to further explain these charges.

For the foregoing reasons, the Court should reduce plaintiff's request for attorney fees by $3,905 (35.5x$110).

### 3. The Court should award plaintiff costs in the amount of $3,902.24 ($4,012.31-$110.07).

Plaintiff seeks costs in the amount of $4,012.31 and contends that the Court should award all costs incurred. Mtn. at 2 ¶ 4; Mtn. Br. at 4. Defendant Quest requests that this amount be reduced by "the approximately $170 sought as reimbursement for meals." Rsp. at 7.

The exhibits supporting plaintiff's request for costs include a $67.98 dinner with client on December 28, 2004; a $51.30 lunch with plaintiff for trial witness preparation on January 8, 2005; and a $42.09 lunch with plaintiff during trial on January 11, 2005. Mtn. Ex. 2. These amounts total $161.37.

The local rules of this Court require that a motion must contain a statement that concurrence in the motion was attempted. E. D. Mich. LR 7.1(a)(2). Plaintiff's motion contains no such statement. A dispute over $161.37 of $4,012.31 sought as costs (in other words, a dispute over approximately four (4) percent of the amount sought as costs) is the type of dispute

16

that the Court might expect the parties to discuss and/or resolve at a pre-motion concurrence attempt. Defendant Quest's request for reduction in the amount of costs is limited to a specific category of costs and is minor in relation to the total costs sought by plaintiff.

Furthermore, plaintiff has not filed a reply to defendant Quest's objection in this regard. Although not mandatory under E. D. Mich. LR 7.1, such a filing might have explained the purpose of counsel's December 28, 2004 dinner with his client or what was accomplished during the January 11, 2005 lunch with him during trial. However, as to the January 8, 2005 lunch with plaintiff for trial witness preparation, it does not appear that there is a corresponding trial witness preparation attorney fee. See Mtn. Ex. 1 at 8. Therefore, the Court should allow the cost of the January 8, 2005 lunch, as the explanation is sufficient and the cost of this lunch was likely less than the relative charge for lead plaintiff counsel's hourly rate.

In accordance with the foregoing, the Court should award plaintiff costs in the amount of $3,902.24 ($4,012.31-$110.07).

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this

17

Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

*Paul J. Komives*
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: April 21, 2005

PURSUANT TO RULE 77 (d), FRCVP
COPIES HAVE BEEN MAILED TO THE FOLLOWING
Richard Tomberson
and Raymond Carey

ON 4-21, 2005
DEPUTY COURT CLERK